Next matter is Tubbs v. North American Title. Good morning, Your Honors. Robert LaRocca on behalf of Arthur and Jane Tubbs. There are two issues under RESPA, our federal claim, the first claim. And the first issue is whether there was a split, whether the record shows that there was a split. The district court adopted Judge Hardiman's dissent the last time we were before this court and said that you have to look at the individual charges, the $150 by North American and the $80 by Wachovia. And that's what has to be split. We rely on two cases out of the Seventh Circuit, Weiserwick and the Christakos case, which have the same fact pattern as this case, and say no. What you do is you look at the entire settlement service that's being charged for. You look at it. Even if we do that, in one of those cases, I think it was the Weiserwick case, the Seventh Circuit specifically said, look, maybe the district court can sort this out and make a finding and determine if there's been a split. But in your brief at page 7, you said that issue in this lawsuit is a charge of $150, $75 per lien that North American charged the Tubbs and pepped for itself to release and discharge these same liens. That does seem to be what the case is about. And if that's what the case is about, how can you survive the Freeman v. Quicken loan scheme? Because, Your Honor, I think that what Christakos said is that you look at what is the settlement service. Look at it from the standpoint, from the vantage point of the consumer. The consumer is charged for a settlement service. RESPA defines settlement services in a functional way, title examinations. It's in the statute at 12 U.S.C. 2602. Title examinations, property surveys, mold and fungus removals. In other words, it says what is the service that's being charged for from the consumer's perspective. And here, the Tubbs were charged $230 to record the releases. They were charged for one settlement service. And that's exactly what Christakos held. And I think that's the correct reading of RESPA. You have to decide whether you're going to follow Christakos' reasoning or Judge Hardiman's. Well, we just have to follow Freeman. It's easy. We can forget about it. I don't think that Freeman precludes that, Chief Judge McKee. And I don't think Freeman actually discusses it. What Freeman says is that there has to be, in order to establish a violation of 2607B, a plaintiff must demonstrate that a charge for settlement services was divided between two or more persons. And then Justice Scalia talks about a two-step process. He says that you have to have the receiving, the settlement service provider has to receive some money from the Tubbs and then has to allocate that money. Those are the two steps. But he says more than that, because you're always, every settlement, there's a pool of money that the seller puts into a big pot of money. People sit around the table, paper flies around the rooms, and the settlement clerk, like a little mad person, starts checking off boxes on this form that you've provided to us. And some money goes here, some money goes there. There's always going to be a big flow of money into a pot. Most of that comes from the mortgagee. And then the money flows out. So there's always going to be that flow. Yes, but the issue, the key issue, Judge, is whether, what settlement service is being charged for. See, that's my concern. If it's just, if you're saying that they're just charging for a service, that they knew Wachovia was really committing, and that's really what you're saying. You're saying that the settlement company charged some things at 1101 of the settlement sheet and 1203 of the settlement sheet, and particularly 1203, that seems to be the bigger problem, the recording and the release of the liens. And it knew that Wachovia not only was going to do that, Wachovia was in fact obligated to do that, I guess under the terms of its loan to the Tubbs. And therefore, they're charging this $150, 75 per lien, for something they never did. And they knew they were never going to do it when they were going to charge it. That's really the crux, it seems to me, of what you're arguing. It is, and the question is, though, when both of them say we're charging for the same settlement service, and you look at it from the Tubbs vantage point as the consumers, and this is a pro-consumer statute, after all. Which is to be narrowly construed under Freeman, not broadly. Well, he said, no, Justice Scalia says take it up to the full limit, but not beyond the limit. He says you can take it up to the maximum. And the limit being requiring a split. Right, but if you look at it from the Tubbs standpoint and say what was the charge for, was the charge for recording the release of the mortgages, that was a settlement. See, the question, Chief Judge McKee, is what do you do? When you focus us on what the Tubbs viewpoint was, you're getting into the expectation of one of the parties, it seems to me you're going down the contract road here, not the RESPA road. No, Your Honor. The language in RESPA is no person shall give and no person shall accept any portion, split, or percentage. So that's the split. Of any charge made or received for the rendering of a real estate settlement service. So the issue, that's what has to be. The last part is crucial. Other than if the service is actually performed. Right, right. And that's the second problem. But we're just talking now about the split. And the split has to be, quote, for the rendering of a real estate settlement service. And so the question is, what is a real estate settlement service? And Quicken Loans really doesn't address that. Quicken Loans is just a pure unilateral order of charge. And what I'm saying to you is that if you say a real estate settlement service is the kinds of functional services that RESPA defines in 2602, title examinations, property surveys, in other words, mold and fungus removal. If you look at it that way, according to the definitions, the settlement service here was recording releases. And once you say recording releases was the settlement service under RESPA, then that money, the tubs were charged $230 for the rendering of that settlement service. And that money was apportioned between Wachovia and North America. And it's squarely within the ambit of RESPA and Quicken Loans. Where is the $230 you're focusing on? Where is that on the settlement sheet? You're saying that's subsumed within the disbursement on the two mortgages on line 1501 and 1502? Yes, but if you look at it from the functional standpoint, the way RESPA – let me give you an analogy I think is right. When we file a notice of appeal, we pay one amount of money to the court. Most lawyers and most clients don't. That's actually allocated between this court. Some of it goes up here and some of it goes down to the district court. But we pay one check. It's for the right of an appeal. And nobody really cares that it's allocated or knows that it's allocated. It goes to Washington as well. But from our standpoint as litigants and clients, we're paying for the right to take an appeal. Whether it's allocated after that, it's sort of – we don't know. It's immaterial to us. From our vantage point, we're paying for the right of an appeal. What the Tubbs paid for, the settlement service that they paid for, was to have their releases recorded. And that's what Christoco says is the one settlement service. The district court said that the agency – all these things that the agency did that they're required to do, they're reflected in the payoff statement. Collect money from the appropriate parties, make appropriate distribution, verify the mortgages, the mortgagee did in fact prepare the mortgage instruments, the mortgagee did indeed prepare and record the releases. And then the court said, this is not a situation where the title service agency marked off – the copious $80 charge for recording leases, but rather they charged a separate fee for its own services relating to that release. Now, if you agree that that's what the court found, is that wrong? Yes. Okay. And it's wrong for two reasons. The first reason it's wrong is that they changed their theory after the lawsuit began. At the time, they charged a release recording fee. If you look at line 1203, it says, quote, release recording fee $150. Wachovia was charging for a release recording fee. They were both charging for the exact same service. Now, after we began this lawsuit, North American changed – dramatically changed. Oh, we didn't – we said we were charging for a release recording fee. What were we really charging for? Quote, to satisfy the mortgages. And then they just took their regular – and then that litany that you just read of requesting the payoff statements, that's just their disbursement activity. They're paid $325 to be the disbursement agents, and that's what dispersing is. You have to get a payoff statement from the lender to disperse money. You have to send them a cover letter with the check. I mean, they broke down dispersing into discrete steps and made that – You're saying that they charged for something that they did not do because they knew Wachovia was going to do it, and the Sutherland Company charged them anyhow, and this charge is what appears on line 1203. And they admitted that they didn't do it. When I asked Mrs. Hildebrand, she said, we didn't record these releases. They didn't even have the releases in their files. They charged for something they didn't do, but I'm still having trouble understanding how this constitutes a split. Judge Vanesky, it's a question of how you define what a real estate settlement service – Now, Wachovia would be liable as well. No, because Wachovia did – Are both parties to a split equally responsible? No, not if you do the work. Did you say that in Freeman in terms of there's potential criminal liability here? Your Honor, not if you do the work. Wachovia did the work. They couldn't possibly be liable here. So the question is, if you define a real estate settlement service – But the giver, you know, if I'm Wachovia and I decide I'm going to kick back something to somebody else, I'm responsible, even though I did the work. That's under kickbacks. That's under Section A, a different section of RESPA. Yes, if you kick back money to somebody for no services, you are liable under RESPA. But Wachovia would not be liable here because it did perform services. You have to do two things. You have to have a split end for no services. You're saying it's a settlement company that did not perform services. Yes, that's correct. But if you pay somebody who hasn't done any services, you're still liable under B. Only if there's an allocation, yes. That's right. Now, the second reason, I think that defining – focusing on the settlement service that was rendered as the correct focus of this, not the individual charges that they happened to make, but what was the settlement service that the Tubs were paying for? That is, as I said, consistent with the way RESPA defines settlement services. It's also consistent with, as I said, RESPA's consumer purpose because as a practical matter, it's what the Tubs, from the standpoint of the consumers, what they were paying for, the release recording. And finally, they could have – it allows a defendant to kind of play a shell game. If they'd taken the $80 from Wachovia from Line 1501 and 1502 and put it on Line 1203 and made Line 1203 a total of $230, and that's what actually they should have done under the HUD instructions because HUD says that 1203 is for government recording charges. So if they'd followed the HUD instructions, Line 1203 would have read $230. And then they would have paid it after settlement. They would have paid it to Wachovia and to themselves. Even they will admit that that's a split. And they did when Judge Irenas asked them that question. Suppose you put it on Line 1203. Yes, that would be a violation. Well, at this point, you're talking about not even form over substance. You're talking about no form, just obliterating substance entirely because if you're saying, oh, if the defendant can choose which line to put it on on a settlement sheet to decide whether there's a split or not, that makes no sense in terms of the purpose behind RESPA. And that's another reason why you have to focus on is what was the settlement service that the consumer was being charged for. Judge Hardiman thought there was a problem. His dissent that Judge Irenas adopted thought there was a problem of aggregating. You know, you'd always aggregate. You could sort of pick and choose and aggregate to manufacture litigation. But you can't do that. What we're talking about is when the exact same settlement service is being charged for. I mean, you can't pick just anything willy-nilly off of a HUD one and combine them together. What we're saying here is that two entities charged for the identical settlement service, a combined amount was paid by the Tubbs for that settlement service at the closing, and the title agency distributed that between two entities, and that's a violation under 2607 in Quicken Loans. Thank you very much. You still have some time, I think. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Chris Henning for the appellees. When we were last before the Court, a motion to dismiss decision from Judge Irenas was remanded and sent back to him. With the expectation, I think, that the Court envisioned a developed discovery record to follow. That's exactly what happened. Plaintiffs received all the discovery they could have hoped for and were back here in front of this Court, this time on a fully developed summary judgment record instead of the pleadings. Mr. LaRocca's argument that, and he says that you conceded as much before the district court, that if rather than the settlement sheet being laid out this way, if $80, I think it's $80, had it come out of the pot that's the disbursement to other pots, that's the amount going to the, under the mortgage, it's out of 20, it's on what, 1203? 1501 and 1502, those lines, the big money. Take it out of there, put it on line 1203, and then you've got $230 on 1203 for the leasing recording fee. Settlement proceeds. Settlement company then takes $80 out of that pot, gives it to Barcovia to do what they were going to do, record the satisfaction of lien, and then the settlement company pockets the difference, not having performed any service for the money they just put in their pocket. That, you're saying, would be a violation of 8B under Westbrook. On these facts, I don't think so, Your Honor, after Freeman. Here's why. Well, you conceded that before the district court, I thought, and Mr. LaRocca just represented that you did. Well, that was in an oral argument colloquy before the motion to dismiss decision the last time around. Yeah, but, you know, it's weird. When someone, a lawyer, makes, in the course of his representation, her representation, says something to the court, whether it's in a complaint or in response to a question, an oral argument, we tend to take that kind of seriously. Because in my eyes, it's just an oral argument. As do I, Your Honor. I take your point. To the extent it matters, there was a mycology with Judge Arenas. But particularly after Freeman, here's why I think Freeman matters and changes that analysis. What has to be split under 8B is a, quote, charge for the rendering of a settlement service. There's an interesting fact here about the $80, the $40 per mortgage. Wachovia waived its service fee. Those $40 are simply the cost that the clerk imposed on Wachovia to file the release documents. So that's not a charge for the rendering of a settlement service. Wachovia waived the settlement part of that. So if you were to lump the $40 per mortgage for a total of $80 with the $150, you're not creating a, quote, charge for the rendering of a settlement service. And I don't think that's inconsistent with the colloquy of Judge Arenas below. And, in fact, there's another reason not to be concerned about that. The charge here, the $150 charge, was not for the same service as the $80 to Wachovia. In fact, as I said, the $80 from Wachovia wasn't for a service at all. It was a pass-through of the charge from the recording. As you mentioned, Judge Arenas found that the $150 charge was for conduct taken by title agency to get the mortgages paid off, the prior mortgages paid off. Well, then what's the money on line 1101? The $325. What's that for? So, Your Honor, that requires us to talk a little bit about this rating manual, rate manual that I just mentioned. Oh, please don't talk about it. Forget the question. Don't get into that damn rating manual. Well, that just goes to how the fees were set. And what services are included within Wachovia. Who sent us that rating manual? Well, I take your point on the split. What Freeman says is there's a sequential process to the split. The settlement service provider first receives a fee from the consumer and then pays some portion of that fee to a third party. As you said, Chief Judge McKee, the charge at issue in our case is the $150, and there's no dispute that all of that was kept by title agency. That did not go to anyone else. So. That's what Mr. LaRocca calls a shot game. Well. Because of the way you drafted the HUD form. Well, they couldn't have been put together because they weren't for the same thing. I'm sorry. Those numbers couldn't have been put together because they weren't for the same thing. Title agency's conduct was for getting the prior mortgages paid off. And you see in that litany of work cited by Judge Arenas, all of that is geared toward getting those prior mortgages paid off. The Wazoric split, the Christakos and the Wazoric split, I think requires a little more attention after Freeman. Yeah, let me ask you about that. Why doesn't your brief meaningfully address the Seventh Circuit's decision, and why is he right? Your Honor, I think, frankly, we gave those cases the attention they deserved after Freeman. My God, another circuit court with perfectly good judges who, one of whom is often mentioned as a possible Supreme Court nominee. And you leave it to a footnote without any discussion? Your Honor, by the time we filed our brief, Freeman was the controlling authority on whether there was a split. So we spent our time talking about Freeman. And you don't think, why is Wazoric, which raises issues very similar to the ones before us? It certainly does. Similar fact pattern, I agree with that. Here's the problem with those cases after Freeman. And really, we can talk about Christakos because Wazoric just follows Christakos. Christakos, there was no dispute that the settlement agent's fee was for the same service as the prior lender's fee. In fact, the settlement agent conceded as much and refunded the money to the consumer. We don't have that here. The title agency's fee was for different conduct than the charge for Wachovia. More importantly to the split issue, the Christakos split operates on the assumption that what can be split to violate 8B is the new loan proceeds from the new mortgage company. Worth giving that language. This is from Christakos. These payments, meaning the one to the settlement agent and one to the prior lender, were made from the same pool of funds from the loan proceeds over which intercounty settlement agent had control and directed payments made from. But 8B is not violated by splitting some pot of money. It's violated only by splitting a charge for the rendering of a settlement service. The new pot of money from the new mortgage company is not a charge for the rendering of the settlement service. The next piece of 8B we've talked about, excuse me, take a step back to Freeman. I think implicit in Freeman is that the settlement service provider cannot split what it doesn't receive because of the sequential process Justice Scalia is talking about. He's saying a settlement service provider receives money and then pays part of that money to someone else. I think it's a stretch, particularly the Supreme Court admonished this I think in that case pretty clearly to really stick to the language of 8B and RESPA more generally to say that something can be split. The thing that can be split is not what the settlement agent received. There isn't a $230 charge here to Chief Judge McKee's question that title agency could have split. The second piece of the RESPA analysis was this charge for quote services actually performed. The rate manual I think we'd all probably prefer to discuss less. For not to discuss it. Has a role here. When our client, the settlement agent, is determining how much it can charge for a particular set of services and then what services are included within that charge, it goes to the rate manual. In fact, it has to. When that document is submitted to the New Jersey Department of Banking and Insurance and approved, it becomes the fees they have to charge. Not may or wish, but have to charge. So there's a provision in this rate manual that says when you're a settlement agent and you are arranging for the satisfaction of prior mortgages, you shall charge $75 per mortgage. That's what's happening here. And that is the basis of the charge. The title agency testimony in the record below is that this provision of the rate manual, it's 7.1b, is the basis for the $75 charge. And more importantly, I think we know that from the actual about number of the charge. So 1203 is $150 and we know that's 75 per mortgage, which matches exactly to the 7.1b charge of $75 per mortgage. So we've had in the papers the plaintiff's dispute whether there is in the disputed issue of fact about what was the charge actually for? Was it for recording or not? It wasn't for recording. He's right. Title agency didn't record this document. But I think we're now into those old cases where at best they're trying to raise a sort of metaphysical doubt about whether a factual dispute exists. I think it's clear that from the matching of the charge, the $75 per mortgage, to the rate manual, that's the basis of the charge. And it is. And below, in the record below, upon questioning from plaintiff's counsel, a representative from the Rating Bureau, the folks who put this document together and submitted it to the New Jersey Department of Banking and Insurance for approval, testified, yeah, the stuff you're talking about is a 7.1b, a ranging for the satisfaction of a prior mortgage charge, and that's where it belongs. Your Honor asked a question to plaintiff's counsel. Well, what plaintiff's counsel argues and the Tubbs argue that all of the litany of work you mentioned that Judge Arenas relied on is actually swept up in another charge. It's the 325 charge Your Honor referenced, I think on 1101. Again, if we want to know what that charge is for, there is one place to go. The rating manual. And that charge is for attending or conducting a closing. And that's not what's happening here. Now, the plaintiff's response is, but all of the stuff you did is to prepare for the closing and the disbursements that follow the closing. So conducting the closing must include everything that was done to prepare for the closing. A few problems with that. When interpreting any document, rate manual, contract, or otherwise, we're told to give effect to all of its provisions when possible. The plaintiff's argument would read this 7.1b right out of the manual, out of existence. The other thing, you can tell from the structure of this document that not everything done to prepare for the closing. This document, what, the settlement sheet? The rate manual, I'm sorry, Your Honor, is included in the 325 number. For instance, if you look down just a little farther in the rate manual in Section 7.2, there is a charge permitted, it's $25 each, to print documents and copy documents. These are the settlement documents you might receive from others pre-settlement when you have to go get this disclosure or that certification. Well, plainly, that's done to prepare for the closing, but the document approved by the New Jersey governmental folks says that's a separate charge from the 325. So on RESPA, the summary is no split under Freeman. We don't have the sequence that Freeman envisions. And from Christakis and Wazurik, if you look at the punchline of Christakis, there the court says, we think the statute is broad enough to cover a situation where a consumer pays a fee to Party A and a Party B, but only one of them does the work. That, I think, is an undivided, unearned fee in the terms of Freeman that's not actionable. In our particular case... Say that again. The term used in Freeman is an undivided, unearned fee. It goes to your question earlier, Chief Judge McKeith. An entity gets a charge and doesn't do anything for it. I would say that's not us in this case, but for the legal question, it doesn't matter. An entity gets a charge and simply does nothing for it. Justice Scalia characterized that as an undivided, unearned fee and said that's not at all actionable under 8B of RESPA. Instead, the split is required. So Freeman controls, and the pre-Freeman cases of Christakis and Wazurik, not only are they pre-Freeman and therefore didn't anticipate Freeman correctly, they don't control. Plaintiffs have said, well, wait a minute. The Seventh Circuit already required a split before those cases, and all that Freeman did was say a split's required. It's true that the Seventh Circuit, before Freeman, said a split was required, but the split that Freeman requires is not the kind of split that Christakis approves. The only time, Your Honors, that the 150 in our case and the 80 were ever together was in the pot of new money from the new mortgage company. And so if that's what's being split, again, that's not a charge for the rendering of a settlement service, and that's what 8B requires to be split. What should the consumer understand by that line 1203 that says this is a release recording fee, $150? Good question, Your Honor. In this case, the Tufts testimony was they didn't read it, and so they didn't have any understanding about what it would cover. And more importantly, 8B is not a representation or labeling-based statute. If you read the statute, it simply says you shall not give or accept a portion split or percentage of a charge rendered for a settlement service. That piece of the statute is not about what kind of statements are made. The HUD manual, or you want to talk about manuals, the HUD explanation says that's the government recording fee, right? That's true. 1203. That is true. I think the answer to that is the Tufts didn't create any expectations for the Tufts in this particular case, and more generally, 8B is not driven by representations or omissions. It's a simple analysis of was there a charge, and if so, did you do the work for it? Thank you, Your Honor. Thank you. Mr. Larkin? A couple of brief points. I don't think that his point that Freeman is inconsistent or somehow overruled Wyserowic and Christakis is not correct. The Seventh Circuit has very strictly required a split. He read you the language from Christakis, but I'd like to read you the sentence before what he read. It said, Ms. Christakis claims that she paid $52.50 for the settlement charge to record the release. For the settlement charge to record the release, $23.50 of which went to Mellon, who actually recorded the release, and thus earned the fee, and $29.00 of which went to Intercounty, who did nothing in return. And then the language he read, these payments were made from the same pool of funds from the loan proceeds over which Intercounty, a settlement agent, had control and directed payments. Therefore, Intercounty received an unearned portion of a settlement fee that was unearned in violation of 2607B. In other words, Christakis says that... I understand. That goes to your hypothetical about they're getting around it by just putting all the money up in the big pot of funds and not putting it where you say it belongs on line 1203. Right. And Mr. Henning says, well, the real difference here is that we were charging for two services. We weren't really charging. Even though we said it was a recording fee, we were actually, when we got into discovery and deposed them, they claimed it was on their satisfying mortgage. First of all, the rate manual that they purport to rely on, it's called recording service fee. That's what the heading of 7.1 is. It's a recording service charge. The 325 that you asked him about, he said, oh, well, it's for attending. But he didn't... It's also for disbursements. That's included. It's attending, closing, and disbursements. And they admitted that disbursements are included in the 325. But the fact that they're now claiming there's a different settlement service, and that's what absolves them. There's no split because there were two different settlement services. Well, they can't get summary judgment on that. Because they changed their whole theory of the case after the case began. They charged for one thing, and then they shift it and say, oh, no, it's really for satisfying the mortgages. And then they try to enumerate these disbursement activities that they're already compensated for somewhere else. I mean, if anything was a disputed issue of fact, they precluded summary judgment when they changed their theory of what they were doing. And contradict the charge they made at the time. From your perspective, what is on the record which gets to the second part of 7 of 8B, and that is the split? So I'm clearing my mind, why isn't this appropriate for summary judgment? We're making a lot of very good arguments as to why, if it were to get to a trial, you may well win. But right now, on the record, under 8B, what is there that gets you past the RESPA, Freeman v. Wickin-London's hurdle? Chief Judge McKee, Freeman did not. Freeman was addressing a HUD policy matter. No, it's a different case. I understand that. It addressed a sort of unearned fee. There was no other party of the pick. Nobody was charging for the same thing. And HUD had taken a position that this sort of unilateral overcharge could violate RESPA. And that's what Freeman was about. And they said no. And they were taking this position that a portion split could mean 100%. And they said no, that's not what portion split means. It means it has to be allocated. They didn't address, and that's what the issue for the panel is. It's an issue that was not addressed by Freeman. What is a settlement service charge? What is the settlement service charge that has to be split? Either you're going to agree with Judge Hardiman's dissent and say it's these two separate charges, the $80 and the $150. And those are separate. And each of those has to be further split. And that's one way of, I mean, that's the way Judge Hardiman saw it. Or you're going to follow the Christakis-Wiziorek logic and say no. What is the settlement service? And Judge Hardiman's dissent never really asks that question. What is the settlement service that's being charged for? If you define the settlement service from a functional standpoint, like title examination, like the illustrations that the statute gives you, like mold and fungus removal, like property searches, all of those functional things that happen, and say the settlement service being rendered was recording the releases, if that's the settlement service charge, then that was split. That was allocated between two entities. It was squarely within RESPA. So it really is a question, the $64 question here, is how to define a real estate settlement service under 2607. And that was not, I mean, it was not addressed by Freeman. Freeman doesn't foreclose it. The two-step logic it talks about happened here, where they collected money and then further allocated it. It just was not, you know, it wasn't an issue with Freeman. Let's end your argument, Mr. Larkin. Thank you very much. Thank you, Your Honor. Thank you, Madam Advisor. We're going to have to get a transcript, right? Yes. A transcript of the argument. Could you check with Ms. Ayala and she can instruct you on how you'll get a transcript to it. That would be helpful. Yes.